My name is Scott Mossman and I represent the petitioner Juan Pablo Herrera-Ruiz, and I'd like to reserve two minutes. Okay, keep your eye on that timer, you see that right on the lectern? Go ahead, Mr. Mossman. My client was prejudiced by the ineffective assistance of his counsel because he suffered past persecution and thus is a refugee and prima facie eligible for asylum. In reaching a contrary result, the board abused its discretion by disregarding the controlling precedent of this court. The board held that my client suffered no past persecution because he, quote, was never personally harmed, end quote. That holding is directly contrary to this court's precedent in Navas v. INS, Ruano v. Ashcroft, and other cases cited in our brief. Mr. Mossman, this is Silverman in Phoenix. I think you may be absolutely right about that, but the problem I have, and tell me if I'm missing the boat here, but the problem I have is when the BIA first decided the case in February of 2002, it specifically adopted and affirmed the immigration judge's decision. And the immigration judge specifically found that he could relocate elsewhere in Guatemala safely. So, in terms of prejudice, even assuming you're right that he has established past persecution, I don't see where this finding that he could relocate safely has in any way, shape, or form been challenged. Yes, Your Honor, the IJA did briefly mention countrywide persecution, but it was under the assumption that my client had not suffered past persecution. And if past persecution is established, it dramatically changes the analysis. Under the government's own regulations, 8 CFR Part 208.13, there arises a presumption of countrywide persecution if past persecution is established. And additionally, I'd also like to note that the motion to reopen also provided the facts that his two brothers were indeed missing and they were not accounted for in Guatemala, which was not, it wasn't clear in the original proceedings, and that, we submit, is because of his ineffective assistance of counsel. Thank you. And I'd also like to note the government filed a letter brief a couple days ago, and I'd like to address a couple of the cases cited in there. Nogulco v. INS, the case that the government cited for second, it's really not on point with our case because in that case, the applicant hadn't suffered personal harm, but the violence that was inflicted was on his friends. Here we have something totally different. We have the shooting of your brother as the two of you are fleeing from your house, the abduction and killing of your father, death threats against the entire family. That's quite different than, you know, seeing some of your friends beaten up. And so we say that case is inopposite. And I'd also like to note that the citation of the First Circuit case, Zhang v. INS, that's misguided because in that case, the new evidence simply corroborated the testimony that was already credited by the agency. Here, this is a motion to reopen that was filling gaps that were the I.J. specifically noted were present in the testimony, and the motion filled the gaps with the evidence. And so that's unlike just simply corroborating the prior testimony. And if there's no other questions, I would reserve the rest of my time. Thank you. MR. BUCKHOLTZ Good morning, Your Honors. May it please the Court, my name is Jeffrey Buckholtz, here on behalf of Respondent Attorney General Don Ashcroft. I'd like to begin by addressing Judge Silverman's question. Judge Silverman is exactly correct that the immigration judge did expressly find that even assuming, contrary to his decision, that Petitioner had established past persecution, that the government had carried the shifted burden of showing that relocation within Guatemala was possible. Pages 253 and 254 of the record contain an express finding on that decision where the immigration judge noted that the only reason Petitioner had given when asked specifically at the hearing why he couldn't relocate within Guatemala was that he was afraid because he'd on his brother. That attack, however, occurred in Petitioner's hometown, not in Guatemala City. And Petitioner's two brothers, in fact, went on to live in Guatemala City. Petitioner now says their whereabouts are unknown. At the immigration judge hearing, Petitioner testified that his mother corresponded with his brothers in Guatemala City by mail, and Petitioner testified that, in fact, they resided there. The immigration judge correctly concluded that where Petitioner didn't give any reason why he couldn't relocate, where his brothers, in fact, had relocated, apparently successfully, and where the country report explained that guerrilla activity was concentrated in remote regions away from the capital, it was reasonable, I submit, for the immigration judge to find that the government had satisfied its burden of showing relocation was possible. The main point I'd like to make here today, though, is that the board did not err in denying reopening because nothing that Petitioner asserted in his motion to reopen that prior council should have done differently would have changed the outcome of the underlying removal proceeding. Now, let me stop you there, because I take your point on the relocation, and Petitioner may have a difficult time prevailing on that. It seems to me, though, that the only thing we're reviewing here is the board's decision on the motion to reopen. Would you agree with that? I agree completely with that, Judge Thomas. And that is so, unless I'm misreading it, the relocation was not given as a basis for that decision. That's correct, but I don't believe that's the proper way of looking at this. The proper way of looking at this under this Court's cases is that Petitioner has to show prejudice in order to get denial of a motion to reopen reversed. The only thing that Petitioner said in his motion to reopen justified reopening was the alleged ineffective assistance. And the only things that Petitioner said his prior council should have done differently were two things. One is clear up the discrepancies in the record about the identity of his father. And two, apply for relief under NACARA. Even if prior council had done exactly what the motion to reopen says he should have done, that wouldn't have changed the underlying decision. Because the board, in denying reopening, quite correctly said the Respondent's explanation in his motion regarding his two birth certificates and the confusion as to whether he identified his father's body do not alter the outcome in this case. Right. And Petitioner has abandoned his NACARA claim. Right. So I guess I'm confining the analysis of the case and seeing whether you agree with the proper approach. Because we've had this come up in a number of cases where I guess the contention is maybe we ought to leap back and say, well, this is not going to be successful in the long run anyway, so therefore it's not prejudice. It seems to me, and we've held in those cases, and it seems to me that we just have to analyze what the board did. So we have to analyze whether the board correctly made the findings that you just described, correctly denied the motion to reopen. Well, I think that's correct. And I would go a step beyond that, Your Honor. I would say that this Court has to look at the motion to reopen. Because this Court can't fault the board for denying reopening for a reason that was not urged, it doesn't count for reopening. Yeah. So it seems to me the relocation is off the table. No, I disagree with that. Well, I don't see how we've reached that. I disagree with that because it's Petitioner's burden in this proceeding to show that he was prejudiced by the alleged ineffective assistance. Unless he can show he was prejudiced by what he alleges his prior counsel did wrong, there's no justification for reopening. And his motion to reopen doesn't say anything about the relocation issue. So because there were three adequate and independent grounds for the immigration judge's decision denying asylum, one, no persecution. I don't mean to interrupt you, but I would agree with you if the BIA relied on that. But I must tell you, at least I've been on panels where we've said we're confined to the record. And actually, the BIA, you've argued, your colleagues have argued, we can't look beyond that to find new reasons to fault the original decision. So it cuts both ways. It seems, and you may well prevail on the motion to reopen. It just seems to me, I'm just giving you my reaction, that we're probably confined to the four corners of the decision and also the motion. No, I agree. Let me put it this way. If we disagreed with the BIA on its decisions, on its reasoning, it seems to me that we probably couldn't conjure up another reason to affirm at this stage. And conversely, if we agreed with the reasoning here, we couldn't conjure up a new reason based on applications made previously in the applicant's favor to grant relief. I agree completely that this Court in this proceeding is reviewing only the Board's decision denying reopening and not the underlying decision. But I think that, again, I would try to take that a step further because Petitioner here is, in effect, trying to get this Court to review the entire record of the underlying proceeding. That's not the proper way of proceeding in this petition. Right. And so are you. I'm sorry? And to the extent you bring in relocation, so are you. Well, no, because it's Petitioner that has the burden of showing that he was prejudiced. I understand your point. I guess, and I hope you appreciate at least my philosophy on this. So tell me, I mean, just for my edification, and the other two judges may disagree, but why – tell me why we should affirm based on the two reasons, because I think you have an argument based on – or the reasons given in the BIA decision on the motion to reopen. But I gather you believe that that was sufficient. You're not conceding that was insufficient. I'm not conceding that that's insufficient at all. I agree, as I said in the 28J letter that I recently filed, that I think that the Board quite properly said that the Respondent's explanation in his motion regarding the identity of his father and whether he identified his father's body and his application for relief under Nicara didn't alter the outcome in the case. When the Board said that in denying reopening, the Board was absolutely correct, because it is just like in Zhang, where the only thing the Petitioner said the record should be reopened for would have just corroborated the evidence on issues that were resolved by the IJ in Petitioner's favor in the first place. And there's no justification for reopening. There's no reason to reopen if the ground for reopening wouldn't change the result. And that's what the Board found here, and I agree completely with that finding. I think that it's important to keep in mind that when you're reviewing the denial of a motion to reopen, that the review is very narrow. The review is, as Your Honor has pointed out. That's the point I was trying to make. I agree completely with that. I'm afraid I'm not making it clear that I do agree completely with that. Oh, no, I take your point. Because it would be – it wouldn't make any sense. We have a different definition of narrow, I think. Okay. Fair enough. That's okay, though. It wouldn't make any sense for, on review of a denial of reopening, for this Court to engage in less deferential or broader-ranging review than the Court can engage in on direct review of an asylum determination in the first place. And under the substantial evidence standard of review, if Petitioner had petitioned for review of the underlying Board decision, this Court would have been limited to considering whether the record compelled a contrary finding on, one, whether what he suffered rose to the level of persecution, two, whether it was on account of political opinion, and three, whether relocation was possible. And in this case, where Petitioner did not seek review of that underlying decision, the review that this Court should engage in here is even narrower than that, because it would be like a civil litigant – it would be like a civil litigant who loses after a bench trial and then submits a motion for reconsideration. If the civil litigant had appealed the judgment on the factual findings after the bench trial, this Court would be limited to the clear error standard of review. It wouldn't make any sense for this Court to engage in a closer scrutiny of the record on denial of reconsideration than it would have in the first place. That, in effect, is what Petitioner is trying to get this Court to do. Petitioner is emphasizing in this Court the incident in which the guerrillas allegedly shot at him and his brother. But Petitioner's motion to reopen doesn't say one word about anything that his prior counsel should have done differently with respect to that issue. So I don't think that it makes any sense in this Court for Petitioner to be able to say, in effect, that the board should be reversed for denying reopening on a ground that Petitioner himself never urged as a ground for reopening. That's just a basic principle of appellate review and administrative exhaustion. And when you're reviewing the denial of a motion to reopen, which is a disfavored kind of motion because of finality principles, it's even more important to focus narrowly on what the motion to reopen said prior counsel should have done differently, what grounds the motion to reopen said justified reopening, and consider whether those did. And here, I think the board correctly found that they did not. I'd also just like to point out that it's not just that the motion to reopen itself didn't say anything about the incident in which the guerrillas shot at Petitioner and his brother. Neither did the reply in support of the motion to reopen. Neither did Petitioner's declaration. Neither did the Petitioner's request for a stay in connection with the motion to reopen. Neither did Petitioner's bar complaints under matter of Lozada. All of those materials only said that prior counsel should have cleared up the record as the identity of Petitioner's father and should have applied for relief under NACARA. Given that, there's no basis for this Court to disturb the board's decision denying reopening. Thank you, Your Honors. Okay, Mr. Blackall. Thank you. Rebuttal. Your Honor, I would like to point the Court's attention to ACFR Part 2813 again. That's really the key to the whole countrywide persecution question. The immigration judge improperly put the burden on my client because she found no past persecution. If she had, if there hadn't been ineffective assistance of counsel, it would have totally changed the analysis. And also, the IJA did not address the reasonableness of relocation because, of course, she didn't find there was past persecution. And she did not address the fact that denying asylum in cases of past persecution is discretionary where you can, as a matter of discretion, deny for internal relocation. But she never addressed that. She never got to it. And I'd also like to follow up with Judge Thomas' observation that the board didn't think this ground was worthy of denying the motion to reopen. They just simply didn't address it. And therefore, I think under SEC v. Janery, as we cited in our brief, our reply brief, that it's improper to address it now. Mr. Mossman, let me ask you, Mr. Blackall made the point that in the motion to reopen, the only thing raised was counsel's deficiency with respect to the identity of the father and the failure to seek relief under Nicara. Didn't, he says you didn't raise the point about the brother being, that the petitioner was shot at at the same time the brother was and so forth. What's your answer to Mr. Blackall's point that you haven't raised that to the board? Yes, Your Honor. Motions to reopen aren't really about legal argument. They're about evidence. And in the affidavit that my client provided, one of the prominent features that took up most of the affidavit was relating the incident where the guerrillas had shot at him and his brother as they fled the country and they're leaving the country. That was the feature of the affidavit that formed the basis for the motion to reopen. And I think that in the brief that went along with it, we didn't prepare it, but I think that they neglected to actually cite that as one of the IAC things. But it is one of the gaps that the IJ explicitly found was missing and they submitted an affidavit that addressed that gap and it featured it. Thank you. Well, I guess the record will show on that what it will and we'll review it. But it does, I mean, my, the other side of the coin on the narrowness of review is that we may be confined to the two bases asserted in the motion. Tell me why, if you confine yourself to that, you think that there's a reasonable likelihood the outcome would have been different. Well, the judge also found that it was very important that there was nothing that I think she said directly tied the petitioner to the person who claimed to be his father and, you know, who was later proven to have died by gunshot, had been abducted. And that's an important part of the puzzle that was provided on the motion to reopen. And that's obvious and effective assistance of counsel, because my client, if you read the transfer, actually tried to offer it, but I don't know, the attorney just didn't do anything. And that's all I have for now. If there's any questions. We thank you. We thank both counsel. We submit cases submitted for decision. We also want to thank the King Hall Immigration Project for this pro bono effort. It's really of assistance to the court. Thank you. Thank you. This case is then submitted. Next case on the argument calendar, Tucson Women's Clinic versus Catherine Eden, the director of the Arizona Department of Health. OK, the primary primary appellant is. Is the plaintiff, but but there is a cross appeal, right? So I suppose the on the issues raised in the cross appeal, the the cross appellant, the defendants get the last rebuttal argument if they want to reserve time for that. But let's proceed with the opening argument on behalf of the plaintiffs and appellants. Thank you, Your Honor. May it please the court. Bonnie Scott Jones for the plaintiff's appellant's cross appellees. I plan to divide my
judges: Tashima, Thomas, Silverman